## THE NATIONAL FRATERNITY v. EMMA E. KARNES.

### Decided January 9, 1901.

**1. Life Insurance—Warranties and Representations—Waiver.**

The doctrine of waiver applies when the statements made by the insured in his application for policy are warranties, as well as when they are mere representations.

**2. Same—Use of Narcotics.**

A statement by the insured on his medical examination, that he did not use and had never used opium or other narcotics, is to be construed as having reference to a use that amounted to a habit or custom.

**3. Same—Statements Held to Be Warranties.**

Where the insured, in his application for membership in a benefit association, stated that he agreed that the application and his medical examination should form the basis of his membership, and that he would waive all the benefits guaranteed by the association if he made any false statements or answers to questions set forth in his application and examination, his statements made on his medical examination, that he did not use and had never used opium or other narcotics, were warranties, and the beneficiaries could not recover if they were untrue when made, unless the association was estopped from placing its defense on that ground; and it was error to refuse to so instruct the jury.

**4. Same—Pleading Statements as Warranties.**

Where the answer of the insurer pleaded the terms of the contract, and averred that the statements of the insured on his medical examination were false, and that he knew them to be false at the time he made them, and there was no averment that they were material, or that the insurer relied on them, and nothing was alleged to exclude the defense of warranty, such statements must be taken to be alleged as warranties, and the fact that they were not so called in the answer is immaterial.

**5. Same—Benefit Association—Agency—Estoppel.**

Where a membership lodge in a benefit association is organized by one claiming to be an agent of the association, and who is equipped with its blanks and literature, and the association adopts the work of such organizer, it will be estopped through information which such organizer at that time possessed as to the physical condition and habits of those whom he has received for membership in the lodge.

**6. Same—Medical Examiner as Agent—Fraud.**

The above rule as to estoppel would apply also to information possessed by the medical examiner who, at the instance of the organizer, examined the applicant,

and whose action in so doing was recognized by the association, unless such examiner colluded with the insured to defraud the association; but it would not be charged with facts in the knowledge of such examiner unless they were disclosed to him by the examination; nor in a case where the applicant, being himself a physician, wrote out his medical examination, and, with intent to defraud the association, procured another physician to sign it as a matter of courtesy and without examination, the applicant having warranted the statements to be true.

APPEAL from Gonzales. Tried below before Hon. M. KENNON.

The twenty-second assignment of error, referred to in the opinion, was as follows:

"The court erred in refusing to charge the jury, as requested by the defendant in charge number 6, to the effect that if Karnes himself prepared his statement on medical examination, and he falsely answered questions therein as to his wound and surgical operation, and that he took the paper to Dr. Jones merely to get him to sign the certificate, and that he sent same to the medical director of the defendant, and that in so doing he was knowingly intending a fraud on defendant and used the said Jones as the innocent instrument of such purpose, and he agreed he would waive all benefits if he answered said questions falsely, then you will find for defendant, regardless of what Dr. Jones knew."

*Burgess & Hopkins,* for appellant.

*Harwood & Walsh,* for appellee.

JAMES, CHIEF JUSTICE.—The action is to recover of appellant the sum of $2500, as due on a certificate of membership held by Dr. Thomas C. Karnes, payable to appellee, his widow.

As an understanding of the pleading of the defendant is important in deciding some questions raised by the briefs, we shall state in substance the leading defenses. It alleged that every person, to become a member, must, under the laws of the order, make an application upon printed forms in use, and undergo a medical examination in accordance with another printed form, both of which become the only basis of membership entitling the applicant to benefit shares. That on April 21, 1898, Karnes made his written application for membership and his written statement on medical examination upon the proper forms furnished by defendant, both of which are made exhibits, and that therein and thereby he contracted and bound himself in printed and written words as follows:

"(1) To pay to the lodge all assessments, fines, and other charges lawfully levied and imposed by authority of the board of control to maintain the several funds of the fraternity. One assessment to be paid to the accountant of the lodge on or before the first day of each month, without any previous notice being given or required, in accordance with the constitution and laws of the fraternity. (2) To conform to all the laws, rules, and regulations of the fraternity now in force or which

may hereafter be adopted. (3) That the application and the statements made in his medical examination shall form the basis of the membership in the National Fraternity. (4) That he shall have no claim upon the fraternity for benefits except in conformity with article 12 of the constitution and laws of the fraternity, which is hereto attached, marked 'A,' and made a part hereof. (5) That if, for any cause he become suspended as provided by the laws of the fraternity, he shall not be entitled to any benefits whatever during the period of such suspension. (6) That he would waive all claims for disability benefits resulting from the use of intoxicating liquors, opium, and other stimulants. (7) That he would waive all benefits granted by the National Fraternity if he made any false statements or answers to questions set forth in his petition for membership and examination."

That in his statement on medical examination he answered certain questions, thus: Question 10: "Do you now, or have you ever used opium or other narcotics?" Answer "No." Question 15: "How many weeks have you been disabled by sickness or accident in the last five years?" Which said question the said Karnes answered, "Four weeks; malarial fever." Question 18: "Is there anything to your knowledge or belief in your physical condition, family or personal history or habits tending to shorten your life, or to cause sickness, which is not distinctly set forth above?" Which question the said Karnes answered, "No." Question 19: "Have you now, or have you ever had, any serious illness or disease not fully set forth above, or met with any accident or injury, or undergone any surgical operation?" Which question the said Karnes answered "No."

Thereupon the pleading alleges that each and all of said answers were false at the time, and that Karnes well knew them so to be at the time he made them, and then proceeds to allege that he had long prior thereto and subsequently up to the date of his death used narcotics, to wit, "morphine, a drug from opium, and cocaine, both of which were and are narcotics; that in truth and in fact within five years, and on or about the 10th day of January, 1895, the said Karnes had been disabled by an accident, to wit, by being shot, which gunshot wound was a serious one, and disabled him for life, and was a cause of his death; that from said wound he was laid up in bed for some weeks, and he never recovered from the same, and that at the time he made said application he had theretofore undergone a dangerous and serious surgical operation with the view of relieving him of said gunshot wound disability, which operation did not cure him, or even benefit him, and that the said Karnes, being a physician, well knew that these facts would and did "tend to shorten his life," and he knowingly, fraudulently, and falsely made all such statements, and that by reason thereof and his agreements herein set forth, this plaintiff is estopped from recovering herein, in that all benefits are waived by reason of said false statements. That defendant is a corporation, controlled by char-

ter and constitution and by-laws, a copy of which, in force at the time of said Karnes applying, is hereto attached and made a part hereof; and that up to date of the said Karnes' suspension, he only paid in dues, fees, and assessments the sum of twenty-three dollars, and that defendant here tenders into court all of same to the plaintiff as being all the defendant received from him from the date of his application to his suspension, and upon his said fraudulent and false application, not discovered by defendant until after Karnes' death.

"7. Further answering, defendant says that the said T. C. Karnes became suspended on the first day of August, 1898, by failure to pay his assessment then due, and under the laws, rules, and regulations of defendant, he forfeited his benefit shares, and is not entitled to the same, and plaintiff can not recover. That under article 19 of the constitution of the National Fraternity, any member failing to pay an assessment when due, on all shares held, shall stand suspended from all rights and privileges in the fraternity; that on the 1st day of August there was due by the said Karnes assessments amounting to six dollars; that he did not pay the same, and under proper rules of defendant he was suspended.

"8. Defendant company, by reason of the hereinbefore pleas, prays that plaintiff take nothing by her suit, and that it recover all costs in the cause, and for equity and general relief."

The twenty-seventh, twenty-eighth, twenty-third, seventeenth, and twenty-fifth assignments relate to refused instructions which were based upon the theory that the answers and statements made by Karnes were warranties. The charges involved in the twenty-eighth, seventeenth, and twenty-fifth ignored and would have excluded the issue that defendant was estopped by the knowledge of its agents. The doctrine of waiver applies when the statements are warranties, as well as when they are mere representations. As to the twenty-third assignment, the charge would have instructed the jury that any use by Karnes of narcotics, regardless of the character and extent of the use, would have avoided the policy; and we think the court correctly construed the term use, in this contract, to have reference to a use which amounted to a custom or habit.

The twenty-seventh assignment complains of the refusal of the following charge: "You are instructed that Dr. T. C. Karnes in his statement on medical examination, which forms the basis of the contract, and in the certificate of membership, warranted his answers in said statement on medical examination to be true. You are therefore instructed that if you should find from the evidence that said Karnes used morphine or other narcotics prior to the 30th day of April, 1898, and prior to the 25th of May, 1898, the date of his acceptance of the certificate of membership, that Dr. Karnes used morphine or other narcotics, then you must find for the defendant, even though you should believe that said false statement (if it is false) was made intentionally, or through mistake, or in good faith, or by inadvertence."

Bearing in mind that the court had correctly defined the use of narcotics as contemplated by this contract, the above charge was a plain and correct statement of the law applicable, if the statement concerning narcotics was a warranty. The statements were made the basis of the contract; it was stipulated that if they were untrue there should be no liability on the part of the fraternity; and there is nothing contained in the papers composing and evidencing the contract to suggest that the parties intended something different from what was expressed in the terms used. In the application for membership the deceased stated: "I agree that this application and the statements made in my medical examination shall form the basis of my membership." An answer given in the medical examination is as follows: "Do you agree to waive all benefits granted by the National Fraternity if you make any false statements or answers to questions set forth in this petition for membership and examination?" Answer, "Yes." Karnes signed his answer thus: "I certify that I fully understand the above questions propounded to me, and that the answers are correct," etc. The certificate of membership provided that the member shall agree to waive all benefits under the constitution and laws of the fraternity in case any false statements were made, or evasive answers given, to questions in the application for membership and medical examination; and that the application and medical examination and the statements made therein shall form the basis of membership in the fraternity. To the certificate is added his acceptance as follows: "I accept this certificate upon the conditions herein named, and subject to the laws of the National Fraternity, as they now exist, and as the same may hereafter be altered or amended. Thomas Carey Karnes." The statements under the evidence were warranties, and plaintiff can not recover if they prove not to have been true when made, unless defendant be estopped for some reason from placing its defense upon this ground. Life Assn. v. Parham, 80 Texas, 518; Life Assn. v. Harris, 57 S. W. Rep., 635; Insurance Co. v. Lauderdale, 30 S. W. Rep., 733; Miles v. Insurance Co., 3 Gray, 580.

It is insisted by appellee that defendant did not plead the statements as waranties, but as mere false representations, and for this reason, and because the court submitted the issue in the terms of the answer, defendant can not complain. The answer pleaded the terms of the contract to be as above set forth, and alleged that the statements were false at the time, and proceeded further to allege that Karnes well knew them to be so at the time he made them. The latter allegation was an essential one, if the statements were to be construed as representations merely, and we think the answer must be treated as undertaking to plead both lines of defense, warranty and false representations. Nothing was alleged to exclude the defense of warranty. It was not necessary to call the statements warranties.

· In Assurance Company v. Manufacturing Company, 92 Texas, 303, the statements were held not to be set up or relied on as representations, there being no allegation that they were material, or that the company

had relied on them. The answer here is lacking in the same allegations, and the statements must be taken to be alleged as warranties, if anything. The charge under consideration, having been asked, should have been given, and all other charges should have been made to harmonize with it. The judgment must therefore be reversed and the cause remanded.

We believe there is nothing substantial in the first, second, and third assignments. It is evident that the excluded testimony referred to in the fourth assignment consisted of the witness' construction of an article in defendant's constitution. As to facts concerning the status of Macey, the alleged organizer and agent, the witness seems to have been allowed to testify fully.

The issue of estoppel, as raised, concerns only the fact of Karnes' wound, and the operation upon his arm. The principle applied by the trial judge was that the promoter or organizer was the agent of defendant, and if he was informed, at the time he recommended him, of the fact of his wound and the operation, his knowledge was the knowledge of defendant. According to evidence in this record Macey appeared in Gonzales equipped with appropriate literature and blanks, to organize a lodge there, and did so, and his work was promptly adopted by defendant. There is no evidence to show that anyone was then informed of any limitations on his power to bind defendant. He had ostensible authority to do what was necessary to form the lodge and create members. The constitution and laws of the order this organizer did not have with him, and Karnes could not very well have known their provisions. We think defendant was subject to be estopped through information which such agent possessed at the time he recommended the member. Risler v. Insurance Co., 51 S. W. Rep., 757. These remarks apply as well to the knowledge possessed by Dr. Jones, who made the medical examination, who, it could be found from the evidence, acted as defendant's medical examiner for that purpose, by concurrence of the organizer, and that his act was recognized by defendant. The medical examiner is regarded as the agent of the insurer (Endowment Rank v. Coghill, 41 Southwestern Reporter, 341; Royal v. Bowman, 52 Northeastern Reporter, 264), save where it appears that he colludes with the insured to defraud the company. Sprinkle v. Insurance Co., 32 S. E. Rep., 734.

It appears that Karnes himself was defendant's medical examiner, and that in his case Dr. Jones acted as such. But Dr. Jones testified that he was never appointed medical examiner of this fraternity by any authority; that Karnes came to his office in company with the organizer and brought the answers already written out and signed. His testimony is not of a positive character, and an impression made by it, and which a jury might get from it, is that there was really no examination, and that he treated the matter and signed the certificate as a mere act of accommodation for a brother physician, relying, as he states, on Karnes being a physician himself and understanding all the facts. In other

words, that he, in fact, and as an act of courtesy to Karnes, gave Karnes the benefit of his signature for the purposes of the insurance without any examination. Under such testimony there is basis for a charge similar to the one referred to in the twenty-second assignment of error. The fraternity, in our opinion, would not be charged with facts in the knowledge of Dr. Jones, unless they were disclosed to him by the examination. The established rule in this State is that the agent's knowledge must have been obtained in the transaction of the principal's business to be imputed to the principal. Taylor v. Taylor, 29 S. W. Rep., 1057, reiterated in Railway v. McFadden, 89 Texas, 145. It is not pretended, nor can it be under this evidence, that Dr. Jones got information conerning Karnes' wound and operation while engaged in appellant's service. This seems enough to say upon this branch of the case, except that we may add that there does not seem to have been any evidence that Macey was told or knew of the operation on Karnes' arm. All that appears is that Karnes called his attention to his arm, and showed him the use he had of it. The thirteenth assignment, questioning a certain charge in this respect, is regarded by us as well taken.

Upon the issue of false statement as to the use of narcotics, it is not necessary to discuss the assignments further, or to say more than that it should be submitted, and the case made to depend on the truth or falsity of the statement.

Upon the issue of deceased's suspension and reinstatement we think there was no error.

*Reversed and remanded.*