LAURA ASH ET AL. v. FIDELITY MUTUAL LIFE ASSOCIATION.

Decided June 5, 1901.

**1.—Life Insurance Policy—Evidence of Forfeiture.**

Where a life insurance policy lapsed, and in the renewal contract the insured admitted that the policy had been forfeited for nonpayment of the premium, it was permissible for the president of the insurance company to testify that the condition as to payment of premiums was not complied with by the insured, and that the acknowledgment of forfeiture upon the part of the insured was stated in the certificate of health and the renewal contract.

**2.—Same—Knowledge of Agent as Notice.**

A banker holding for collection claims for premiums due on an insurance policy and also a renewal contract to which he was to obtain the signature of the insured, is not such an agent of the insurance company as that knowledge on his part of the falsity of the insured's statements in the renewal contract, not obtained by him while acting in the company's business, would be notice to the company.

**3.—Same—Renewal—False Statements as Warranties.**

Where a life insurance policy was forfeited, and the certificate of health and renewal contract, signed by the insured, stated that the declarations therein were made to obtain a renewal and reinstatement of the policy, and as a basis for such reinstatement, such declarations were warranties, and whether material or not, their falsity would render the renewal contract void.

**4.—Same—Material Misrepresentations.**

Declarations in the renewal contract that the insured had not had any injury, sickness, or ailment of any kind, and that he had not consulted with or been prescribed for by any physician, or received any medical treatment since the date of the original application for insurance, even if they were mere representations, were material, and their falsity vitiated the renewal contract.

**5.—Same—Reinstatement—Contestability.**

Where an insurance policy which provided that it should be incontestable after five years was forfeited for nonpayment of the premium, it was again subject to forfeiture because of false statements made by the insured to obtain a reinstatement thereof.

**6.—Same—Law of Foreign State—Presumption.**

Where an insurance policy provides that it is to be construed under the law of another State, and no proof is made as to what is the law of such other State, it will be presumed the same as the law of this State.

Appeal from Johnson. Tried below before Hon. J. M. Hall.

*S. C. Padelford,* for appellant.

FLY, Associate Justice.—This suit was instituted by Mrs. Laura Cann for herself and her minor children, Harry Cann and James Cann, to recover from appellee the sum of $2000 insurance on the life of James Cann, deceased, the husband and father of the plaintiffs. Pending the suit Mrs. Cann married S. C. Ash, who made himself a party pro forma to the suit. Appellee set up certain statements made in the original application for the policy by deceased, which were alleged to be untrue, and whose falsity was not known to appellee; that afterwards, in August, 1895, the policy had been forfeited by a failure to pay a premium; that in the renewal contract deceased had reiterated the statements in the original application, and in addition had declared that he had not since the date of such original application had any sickness, nor had been prescribed for by a physician, which statements were false.

The trial resulted in a verdict and judgment in favor of the appellee.

We find that in 1891 deceased, James Cann, made application to the insurance association for a policy of $2000, in which he stated that he had always been sober and temperate; that he did not consider a person "sober and temperate" who occasionally became intoxicated. The statement that he was temperate was untrue. In August, 1894, the policy was forfeited by a failure to pay a premium, and thereafter, in a renewal contract and health certificate, deceased reiterated the statements made in the original application, and in addition declared: "I have not had any injury, sickness, or ailment of any kind, and I have not consulted with or been prescribed for by any physician or received any

medical treatment since the date of my original application on which said policy was issued." Those statements were untrue. In the policy it was provided that "if any statement or answer contained in the member's application be untrue in any respect, then, in each and every such case, this policy shall be ipso facto null and void." In the renewal contract deceased stated: "And I hereby renew the statements and agreements contained in said original application, and expressly agree that if any answer or statement contained therein, except as modified in this contract, or if any statement made or contained herein be untrue in any respect, then said policy is and shall continue to be null and void, and the reinstatement thereof inoperative and of no effect." In 1894 deceased had an attack of pneumonia, and was treated by a physician, and in 1892 took the "Keeley cure" at Lampasas at the hands of a physician.

L. G. Fouse, the president of the insurance company, was allowed to state that the condition as to payment of premiums was not complied with by the deceased; that no notice of forfeiture was given to the insured, and if it was given, it was a voluntary act upon the part of the Texas agent, and that the acknowledgment of forfeiture upon the part of deceased was stated in the certificate of health and revival contract. The statement as to the conditions of payment not having been complied with, was objected to as being a conclusion of the witness, and the other statements were objected to because the witness showed that he did not know anything about what he was testifying. The objections were not well taken.

It was fully admitted by deceased in the renewal contract that the conditions of payment had not been complied with in that the premium for August, 1895, had not been paid, and that his policy had been forfeited and become void. The witness could swear as a fact that the payments had not been made, and that no notice had been given by the company of the forfeiture and that the acknowledgment of the forfeiture was stated in the health certificate and revival contract. On the cross-examination it was brought out by appellants that the deceased had admitted forfeiture of his policy.

The proof showed that C. W. Mertz, a banker of Cleburne, had the claims for premiums placed in his hands for collection by appellee, as well as the renewal contract, and presented the claim for the back premium to deceased for payment and the renewal contract for his signature. This was the extent of his connection with the insurance company, and his knowledge of the falsity of deceased's representations would not have been notice to the company. It is the settled rule in Texas that the agent's knowledge must have been obtained in the performance of the business of the principal in order to impute such knowledge to the principal. National Fraternity v. Karnes, 24 Texas Civ. App., 607, 60 S. W. Rep., 576; Texas Loan Agency v. Taylor, 88 Texas, 47, 29 S. W. Rep., 1057.

All that appellants desired to prove by Mertz was not acquired while

he was collecting the claim and obtaining the signature of deceased to the renewal contract. Mertz did not occupy the position of general agent, but was an agent simply to collect the claim and obtain a signature to the renewal contract.

Appellants insist that a verdict for them should have been instructed because the policy was incontestable, according to its terms, after five years, and because the evidence established that deceased was healthy at the time the renewal contract was made, and no fraud was practiced upon appellee by deceased. In the policy it was provided that if the policy lapsed or became forfeited, it might be reinstated upon the approval of the medical director and president, "provided the lapsed member be in good health and furnish evidence thereof," and it is the contention of appellants that the lapsed member had good health and furnished evidence of it, when the renewal contract was executed, and he was thereby entitled to reinstatement, regardlss of any representations or warranties on his part. It is expressly provided, however, in connection with the clause of the policy providing for the reinstatement of a lapsed member, that "such reinstatement or reinstatements shall be exclusively at the option of the association," and if such option was exercised or brought into action by the fraud of the lapsed member, it would vitiate the contract renewing the policy. In the certificate of health and renewal contract signed by the deceased it is stated that the declarations therein were made to obtain a revival or reinstatement of the policy, "and as a basis of such reinstatement." We are of the opinion that the declarations were warranties, and whether material or not, the falsity of them would render the renewal contract invalid. National Fraternity v. Karnes, 24 Texas Civ. App., 607, 60 S. W. Rep., 576, and authorities cited.

If, however, the declarations in the health certificate were not warranties, but mere representations, they were both material and falsely made. Deceased stated in the renewal contract that he had not had "any injury, sickness, or ailment of any kind, and that he had not consulted with or been prescribed for by any physician, or received any medical treatment since the date of the original application for insurance." That application was made in 1891, and the uncontradicted evidence established that in 1894 he had pneumonia, and for two or three years had pains in his stomach. He was treated by a physician while he had pneumonia. The physician prescribed several times for him for nervousness, superinduced by drunkenness. He also treated deceased for an accident to his finger. In 1892 deceased was under treatment by men at Lampasas for the drink habit, one of them being a doctor. Such representations have been held to be material. Insurance Co. v. Harris, 94 Texas, 25, 57 S. W. Rep., 635; Cobb v. Association (Mass.), 26 N. E. Rep., 230.

The clause of the policy providing that the policy should be incontestible specially excepts from its provisions the agreement as to the payment of premiums, and nonepayment of a premium would under

the terms of the policy forfeit it. After the forfeiture of the policy for such nonpayment, it would again be subject to forfeiture on account of false statements made by the insured to obtain a reinstatement. In the renewal contract deceased not only made new statements, but also reiterated the statements in the original application, and agreed that the falsity of either of the new statements or of either of the original ones should render the policy null and void.

It was pleaded by appellants that appellee was a corporation chartered by the State of Pennsylvania, and that the construction of the contract of insurance should be made under the laws of Pennsylvania. The laws of Pennsylvania were not proved, but the court instructed the jury that if deceased, in order to obtain a reinstatement of his policy, declared that he had not had any sickness or ailment of any kind, and that he had not consulted or been prescribed for by physicians, or received any medical treatment since the date of the original application, and such statements were untrue, said statement would be material under the laws of Pennsylvania. This charge is assigned as error, because the laws of Pennsylvania were not proved. In the absence of proof that the law in Pennsylvania would be presumed to be the same as that of Texas, and under the laws of Texas the statements were material, and being untrue, vitiated the contract. Association v. Harris, above cited.

If the charge should be held erroneous it would not necessitate a reversal, as the facts clearly showed that the false declarations were warranties, and independent of their materiality rendered the contract null and void.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.