SOUTHLAND LIFE INS. CO. v. HOPKINS.
(No. 1592.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 11, 1920. Rehearing Denied March 3, 1920.)

1. INSURANCE ⚖═➙357 — EXTENSION OF TIME FOR PAYING PREMIUM CONSUMMATED BY DELIVERY OF NOTE AND CONDITIONS IN SUBSEQUENT RECEIPT WERE WITHOUT EFFECT.

An extension agreement was consummated when insured executed and returned to insurer a note given for a premium, and any attempt to ingraft further conditions or provisions upon it by a receipt sent him thereafter was without effect.

2. INSURANCE ⚖═➙152(3) — STATUTORY PROVISIONS CANNOT BE EVADED BY CONTRACT.

Statutory provisions as to what an insurance contract should contain cannot be waived by contract, and any attempt to do so, direct or indirect, is void.

3. CONTRACTS ⚖═➙167—EXISTING LAWS ENTER INTO AND BECOME PART OF CONTRACT.

Contracting parties are conclusively presumed to have entered into their contract with full knowledge of all existing laws upon the subject which may affect the validity, formation, performance, operation, discharge, interpretation, or enforcement thereof, and such laws enter into and become a part of the contract, binding the parties.

4. INSURANCE ⚖═➙152(3) — STATUTORY PROVISIONS BECOME PART OF CONTRACT.

Parties to an insurance contract are conclusively presumed to have entered into their con-

tract with full knowledge of existing laws upon the subject which may affect the validity, formation, performance, operation, discharge, interpretation, or enforcement thereof, and that such laws enter into and become a part of the contract, binding the parties.

**5. INSURANCE ☞350(4)—POLICY CANNOT BE DECLARED FORFEITED UNTIL THIRTY DAYS AFTER DEFAULT IN PAYMENT OF PREMIUM.**

An insurer cannot declare a forfeiture of a life policy until 30 days from default in payment of premium, even though the policy has been issued without the statutory clause inserted therein, requiring 30 days of grace (Vernon's Sayles' Ann. Civ. St. 1914, art. 4741, subd. 2).

**6. INSURANCE ☞357—STATUTORY PERIOD OF "GRACE" APPLIES TO NOTE GIVEN IN PAYMENT OF PREMIUM.**

Where life policy allowed 30 days of grace for payment of premium without interest, but on date premium was due insurer executed a note for the amount thereof maturing eight months later, bearing interest, and reciting that it was subject to the provisions of the policy, insured, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4741, subd. 2, was entitled to 30 days' grace after maturity of the note to pay the same, although the note contained the words "without grace"; an extension of time upon an agreement to pay interest not being considered "grace" (citing Words and Phrases, Days of Grace; On Grace).

**7. INSURANCE ☞146(3)—DOUBT AS TO PERIOD OF GRACE RESOLVED AGAINST FORFEITURE FOR NONPAYMENT OF PREMIUM.**

Where life policy provided 30 days grace without interest within which to pay premium, and a note was given upon the date a premium was due containing the words "without grace," which bore interest, there was created an uncertainty and a doubt as to whether or not insured should have 30 days of grace within which to pay the note upon maturity; and such uncertainty and doubt must be resolved against a forfeiture.

**8. INSURANCE ☞124—PARTIES MAY CONTRACT AD LIBITUM IN ABSENCE OF STATUTE.**

In absence of a statute governing such contract, the parties to an insurance contract may stipulate ad libitum.

**9. EVIDENCE ☞121(4)—STATEMENT OF INSURED AS TO INTENT TO PAY PREMIUM NOT ADMISSIBLE AS RES GESTÆ.**

Statement of insured, while on his deathbed, that he did not intend to let his insurance lapse, and that he intended to pay a note given for a premium, was not admissible under the rule of res gestæ, nothing being done which his statement tended to explain; issue involved being whether insurer had misled the insured to believe that insured would be given an extension of time to pay the note.

**10. APPEAL AND ERROR ☞1050(1) — ADMISSION OF EVIDENCE HARMLESS WHERE TESTIMONY TO SAME EFFECT SUBSEQUENTLY ADMITTED WITHOUT OBJECTION.**

Admission of improper evidence was harmless, where the objecting party subsequently failed to object to testimony to the same effect given by another witness.

**11. TRIAL ☞79 — OBJECTION TO EVIDENCE MUST BE REPEATED.**

Objection to testimony of witness is waived, where subsequently testimony to the same effect is admitted without objection.

**12. INSURANCE ☞358 — MERE COLLECTING AGENT CANNOT WAIVE INSURER'S CONTRACT RIGHTS.**

A bank which was a mere collecting agent for an insurance company as to notes given for premiums, could make no agreement with an insured which would waive insurer's rights under its contract, and notice to the cashier of the bank was not notice to insurance company of an intent to accept an offer of the insurer to extend a note.

**13. INSURANCE ☞388(3) — FORFEITURE FOR NONPAYMENT OF PREMIUM NOTE WAIVED BY CONDITIONAL OFFER TO EXTEND NOTE.**

Insurer's proposal by letter that if insured would make partial payment of amount due on premium note the balance would be extended a reasonable time, although conditional, and not accepted by insured so as to become a binding contract, *held* to have waived forfeiture for nonpayment of the premium note at its maturity, under the principle of waiver of forfeiture by conduct leading insured to honestly believe premium would be received after the appointed day.

**14. INSURANCE ☞357—TIME CANNOT BE GIVEN FOR PAYMENT OF PREMIUM BEYOND GRACE PERIOD.**

By requiring a policy of insurance to provide for the payment of premiums in advance, the Legislature did not intend that time should be given for payment of premium beyond the grace period prescribed.

**15. INSURANCE ☞138(2) — VIOLATION OF STATUTE AS TO CONTENTS OF POLICY DOES NOT AVOID IT.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 4741, 4954, as to payment of premiums in advance and forbidding discrimination between insurants, relating to what an insurance policy should contain, do not have the effect of avoiding a policy issued in violation of their provisions.

**16. CONTRACTS ☞153—CONSTRUCTION MAKING CONTRACT LEGAL ADOPTED.**

Where an instrument is susceptible of two constructions, one of which would make it legal and the other illegal, the former construction should always be adopted by the court.

**17. INSURANCE ☞186(5)—NOTE FOR PREMIUM CONSTRUED AS BEING LEGAL WHERE TRANSACTION WAS SUSCEPTIBLE OF TWO CONSTRUCTIONS.**

Where a note for a premium could have been given either for an illegal extension of time for payment of premium, or as a legal payment of the premium, the court will hold that it was given as payment of the premium in advance rather than a postponement.

**18. INSURANCE ☞186(5)—NOTE GIVEN "IN LIEU OF" PREMIUM MEANS IN PLACE OF PREMIUM.**

A note given "in lieu of" an insurance premium was one given instead of, in place of, or

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in substitution of, the premium, and a receipt which so stated tended strongly to show that insurer had accepted and considered the note as' a payment and not an extension of time (citing Words and Phrases, In Lieu of).

19. INSURANCE ⬤➠310(2)—FIVE-YEAR POLICY NOT "TERM INSURANCE" UNDER WHICH INSURED HAS ONLY RIGHT TO INSURANCE FOR TERM PAID.

A "Five-Year Term Nonrenewable Policy," providing for the payment of five annual premiums, "the first payable in advance, and a like sum upon each 28th day of February thereafter during the continuance of this policy until five full years' premiums have been paid, or until the prior death of the insured," was not a contract of "term insurance" under which an insured has only the right upon payment of an annual premium to insurance upon his life for the term paid for and the right to continue the insurance from year to year or term to term at the same rate, and default in payment of an annual premium did not ipso facto forfeit the policy.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Term Insurance.]

20. INSURANCE ⬤➠146(3) — CONSTRUCTION OF POLICY ADOPTED ALLOWING GREATER INDEMNITY WHERE EQUALLY FAIR.

Where two interpretations of an insurance policy, equally fair, may be made, that which allows the greater indemnity must prevail.

21. INSURANCE ⬤➠146(1)—CONSTRUCTION OF POLICY CONSISTENT WITH REASON AND LAW ADOPTED.

If one interpretation of an insurance policy, looking at the other provisions of the contract and to its general object and scope, would lead to an absurd conclusion, or a conclusion which violates the statute and renders the contract void, such interpretation must be abandoned, and that adopted which will be consistent with reason and the law.

22. INSURANCE ⬤➠146(3)—AMBIGUOUS CONTRACT CONSTRUED AGAINST INSURER.

An insurance contract is to be most strongly construed against the insurer who framed it, especially where the language is inconsistent, ambiguous, or contradictory, and where a forfeiture is involved, in order that indemnity may be granted rather than denied.

23. INSURANCE ⬤➠146(3)—RIGHT OF FORFEITURE MUST BE EXPRESSLY STATED.

The right of forfeiture must be expressly stated, and not by reference, and must be embodied in the contract in plain and unambiguous language.

24. INSURANCE ⬤➠310(2) — LIFE POLICY CONSTRUED NOT TO CONTAIN EXPRESS PROVISION DECLARING POLICY IPSO FACTO FORFEITED ON NONPAYMENT OF PREMIUM.

Provision in a life policy to the effect that it is issued in consideration of the payment of premiums in advance annually, and that the policy and application constitutes the entire contract, which "shall be incontestable except for the payment of premiums," are far from being express provisions that upon default of payment of premiums the policy is ipso facto forfeited, and they merely give the insurer the right to plead failure of consideration or contest payment in an action to recover on the policy.

25. INSURANCE ⬤➠310(2) — MERE FAILURE TO PAY PREMIUM NOTE DOES NOT AVOID POLICY.

When the conditions as to forfeiture for nonpayment on maturity of a note given for a premium are contained only in the note, the mere fact that the note is not paid at maturity does not, of itself, avoid the policy, such a provision being a condition subsequent, of which the insurer must avail itself by clear and unequivocal acts, and insurer must demand payment at proper time, and, if no payment is made, must declare the policy forfeited or void.

Boyce, J., dissenting in part.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by Mollie I. Hopkins against the Southland Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

W. H. Bledsoe, of Lubbock, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Bean & Klett and Percy Spencer, all of Lubbock, for appellee.

HALL, J. The appellee sued appellant to recover $5,000, alleged to be due upon a policy of insurance issued the 28th day of February, 1916, upon the life of her husband, Bion P. Hopkins, who it is alleged died on the 29th day of October, 1918. She sues as the beneficiary under the provisions of the policy, alleging, in substance, that all premiums had been paid up to and including the date of the death of the insured; that if mistaken in her allegations as to the payment of the premium due February 28, 1918, the policy was nevertheless in effect at the time of the death of the insured, in that, on or about the 5th day of February, 1918, appellant agreed with the insured in writing to a modification of the policy, by changing the time for the payment of the premium due February 28, 1918, to October 28, 1918, it being stipulated that as part of the agreement for the extension of the payment of said premium it was made subject to the provisions of the policy, which contained a clause that a grace of 31 days should be granted for the payment of every premium after the first; that the death of the insured occurred during the period of grace so provided in the policy; that if she is mistaken in her allegation that the insured died during the period of grace then there was never a forfeiture of the policy by the appellant for nonpayment of the premium, because the validity of the premium was recognized by appellant,

⬤➠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and its right to forfeit the same, if it ever existed, was waived, in that, on October 19, 1918, appellant wrote a letter to the insured with reference to the payment of the premium due on October 28, 1918, stating that if it was inconvenient for him to pay the full amount due, viz., $69.13, appellant would accept a partial payment and extend the balance a reasonable time; that the insured was by said letter induced to believe, and did believe, that appellant was willing to negotiate for a settlement of said premium by receiving a part of the amount due, and to grant a reasonable time for the payment of the balance, and that he would have a reasonable time in which to reply to said letter and ascertain the terms upon which a settlement could be made; that at the time the insured received the letter he was suffering from influenza, which later developed into pneumonia and produced his death; that he was induced by said letter to postpone answering for a reasonable time until his recovery, but that in the course of 4 or 5 days he became irrational and unable to attend to business, and continued in such condition until the time of his death; that if it had not been for said letter the insured would and could have paid said premium when due. Wherefore the right of appellant to claim a forfeiture, if any, was waived, and it was estopped to insist that the policy was not in effect at the time of the insured's death. The prayer is for the recovery of the face of the policy, together with the statutory attorney's fees and penalty. The appellant answered, admitting the issuance of the policy, and alleging, in substance: That the policy was not in force at the time of the death of Bion P. Hopkins, on October 29, 1918, same having become null and void on account of the failure of the said Hopkins to comply with its terms and conditions. That the anniversary of said policy was the 28th day of February, and on the 28th day of February, 1918, there was due the annual premium of $66.45 cash; that the provision with reference to the payment of premiums as stated therein is as follows:

"All premiums are payable in advance at the home office of the company, or to any agent of the company on or before date due upon delivery of receipt signed by an executive officer (president, vice president, secretary, or assistant secretary) of the company, and countersigned by said agent. The mode of premium payments may be changed by the insured giving written notice to the company at its home office in not less than forty-five days prior to any anniversary of this policy from annual payments to semiannual payments or quarterly or vice versa, at the premium rates, and on the conditions in force at the date thereof, except as herein provided, the payment of the premiums or installments thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is

payable. A grace of thirty-one days without interest shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the period of grace the unpaid premium for the then current policy year shall be deducted from the amount payable hereunder."

That on January 2, 1918, the assured wrote appellant as follows:

"The next payment on my insurance policy will be due in March, and I am asking to carry my note for the amount until fall, while I can pay it at maturity, but it would be quite a favor to have it carried."

That said letter was received by the appellant on January 23, 1918, and on that day it replied:

"We are in receipt of your letter of the 21st and shall be pleased to accommodate you and are inclosing note due October 28th, which we will accept in lieu of the current premium on this policy."

That said Hopkins executed the note inclosed and returned it to the appellant, same being received and accepted by it, under date of February 5, 1918, subject to the terms of the receipt issued therefor. The note is in terms as follows:

"$66.45     Dallas, Texas, Feby 28, 1918.

"On or before the 28th day of October, 1918, without grace, for value received, I promise to pay to the Southland Life Insurance Company, or order, at its office, Dallas, Texas, $66.45, with interest at six per cent per annum. This note is given on account of the premium due February 28, 1918, on policy No. 170003, issued by said company and if it is not paid at maturity, said policy shall be void, subject to the provisions therein contained—in which event this note shall be a valid obligation for the pro rata premium from the date to which premiums on this policy have been actually paid in cash to the date of maturity of this note, together with interest thereon. In case of the death of the insured before this note falls due the amount of this note with interest shall be deducted from the amount of said policy.     [Signed] B. P. Hopkins."

That on February 5, 1918, the appellant issued and sent to the said Hopkins a receipt for the annual premium of $66.45. That Bion P. Hopkins did not pay said note, and his policy became null and void on October 28, 1918, and at the time of his death, on October 29, 1918, the policy was void and of no effect. Appellant denied that it had waived the forfeiture of the policy or was, estopped to claim a forfeiture, alleging that the true facts in reference to appellee's contention are as follows: That on October 19th, appellant wrote the insured Hopkins as follows:

"In order that your policy may not lapse, we beg to remind you that the note due October 28th you gave in lieu of the premium due last

February, provides no grace, and settlement should be made without fail on or before maturity. If inconvenient to pay the full amount due ($69.13) we will accept a partial payment and extend the balance a reasonable time."

That prior to the maturity of said note the appellant sent it to the Citizens' National Bank of Lubbock, Tex., and that said bank presented the note to the insured while he was in good health, but that he did not pay the note. That it never had, by letter or otherwise, led the said Bion P. Hopkins to believe that a settlement of the note would not be accepted at maturity, but, on the contrary, expressly advised him that unless it was paid or settlement made prior to its maturity the policy would lapse and become null and void.

The case was tried without the assistance of a jury, resulting in a judgment in favor of appellee for the sum of $5,000, together with the further sum of $600, penalty, and attorney's fees in the sum of $1,500, with interest from January 24, 1919, at the rate of 6 per cent., less the amount of the premium note. $66.45 with 6 per cent. interest thereon from February 28, 1918. After the receipt of the note appellant issued and mailed to the insured the following receipt:

"Premium Receipt.

"Southland Life Insurance Company, Dallas, Texas. Received payment as described below. Countersigned, J. W. Hurst, Secretary. February 5, 1918. B. W. G. As. Cashier. Policy No. 170003. Annual premium, $66.45. Mr. Bion P. Hopkins, Lubbock, Texas. Note for $66.45, given on account. This receipt is issued subject to the following terms and conditions: If settlement of the amount described on the face of this receipt is made by draft, or check, and default is made in the payment of such draft or check, this receipt shall become null and void and all insurance under this policy shall cease and determine and the policy shall stand canceled as of the date on which the payment described on the face hereof was due, subject to the provisions of said policy."

The court filed findings of fact and conclusions of law, setting out, amongst others, the facts hereinbefore recited, and further that proofs of death were made and forwarded to the company January 22, 1919, and—

"(12) I further find that about the 1st of October, 1918, the defendant's agent, Ura Embry, as cashier of the Citizens' National Bank of Lubbock, Tex., took up with the insured the matter of the payment of the premium note mentioned, together with various other collections, and that the insured requested the said Embry to return all collections except the premium note, and informed the said Embry that he expected to take care of said premium note.

"(13) The transaction between the insured and the said Embry was sufficient to visit the defendant with notice that it was probably inconvenient for the insured to make payment of the note.

"(14) I further find that when the defendant wrote the letter of October 19, 1918, advising the insured of the maturity of the premium note on the 28th, and offering to accept a partial payment and extend the balance a reasonable time, if inconvenient to pay the full amount, that the insured received said letter, and relied on said representations, and was induced to believe, and did believe, from the terms of said letter that the defendant was ready and willing to open up negotiations for settlement of said premium by receiving part payment and granting a reasonable time for the payment of the balance, and that he would have a reasonable time in which to reply to such letter and ascertain the amount of the partial payment required, and that time would be allowed for the payment of the balance, and that the insured was induced to believe, and did believe, from said representations that the defendant would not forfeit said policy for nonpayment of premium until the insured had had a reasonable time in which to comply with said letter and to complete the negotiations that thus had been initiated by the defendant.

"(15) I further find that a reasonable time for the completion of said negotiations had not ended at the time of the insured's death on October 29, 1918. * * *

"(18) I further find that had it not been for such letter the insured would and could have paid said premium note on or before its maturity."

The letter referred to in finding (14), dated October 19, 1918, is as follows:

"Mr. B. P. Hopkins, Lubbock, Texas. Re your policy No. 170003. In order that your policy may not lapse we beg to remind you that the note due October 28th, you gave in lieu of the premium due last February, provides no grace and settlement should be made without fail on or before maturity. If inconvenient to pay the full amount due, $69.13, we will accept a partial payment and extend the balance a reasonable time. Yours truly, P. N. Thevent, As. Sec'y."

[1-6] The first question to be considered is, Did the failure of the insured to pay the premium note on or before October 28, 1918, the date of its maturity, entitle the company to declare the policy forfeited? Or did the terms of the extension agreement under V. S. C. S. art. 4741, subd. 2, add 30 days of grace to the note? The note recites that it is payable "without grace." When Hopkins wrote the company, on January 21, 1918, asking for an extension of time in which to pay the premium maturing according to the face of the policy, on February 28, 1918, and his request was granted, we think the extension agreement was consummated by his executing and returning to the company the note for the amount. Any attempt to ingraft further conditions or provisions upon it by a receipt sent him thereafter was without effect. Rouleau v. Continental Life Insurance & Investment Co., 45 Utah, 234, 144 Pac. 1098. In the

instant case, however, the difference between the terms of the agreement as expressed in the note and in the receipt subsequently issued is so slight that it has little or no effect upon the decision of the question. The principal difference lies in the fact that the note provides for the payment of the premium "without grace," while no such provision appears in the receipt. This would be to appellant's disadvantage if the receipt is to be considered. V. S. C. S. art. 4741, provides that no policy of life insurance shall be issued or delivered in this state unless it contains certain provisions, one of which is:

"2. A provision for a grace of at least one month for the payment of every premium after the first, which may be subject to an interest charge, during which month the insurance shall continue in force."

This policy contains a clause complying with this requirement of the statute, with the exception that it provides for 30 days' grace without interest. A majority of the court, in Lefler v. New York Life Insurance Co., 143 Fed. 814, 74 C. C. A. 488, held that the stipulation for 30 days' grace for the payment of premiums, inserted in the policy, should not be so construed as to add 30 days' grace to a note which extended the time of the payment of such premium beyond the date when it was due, according to the face of the policy. Judge Amidon dissented in a convincing opinion. The same conclusion was reached in Bank of Commerce v. N. Y. L. Insurance Co., 125 Ga. 552, 54 S. E. 643, and also in Kansas City Life Insurance Co. v. Leedy (Okl.) 162 Pac. 760, L. R. A. 1917C, 917, and other cases cited in the note to that case on page 921. The reverse of this rule was declared in McDougald v. N. Y. Life Ins. Co., 146 Fed. 674, 77 C. C. A. 100. In none of these cases was the 30 days' grace clause inserted in the policy in compliance with a statutory requirement. The case of Schmedding v. Northern Assurance Co., 170 Mich. 528, 136 N. W. 361, is the only case we have found where the 30 days' grace clause inserted in the policy, in obedience to statutory requirement, has been construed. There it was held that the clause did not apply to a note made in lieu of premium payments. The opinion indicates that the case was not well considered, and the force of the decision is weakened by the previous holding of the same court in Franklin Life Insurance Co. v. Commissioner of Insurance, 159 Mich. 636, 124 N. W. 522, to the effect that the term of policy, declaring, "If any premium is not paid when due the policy shall be void," is inconsistent with the statutory provision relating to the payment of premium notes during the 30 days' grace. Blair, Justice, speaking for the court, said:

"As we have heretofore held, 'The requirement that certain provisions shall be and certain others shall not be incorporated in the policy requires us to say that no provisions should be inserted which have the effect of avoiding or nullifying the required provisions,' and 'no provision may rightfully be used which shall, with or without action of the policy holder, materially change or avoid the statute scheme of the contract.' Life Insurance Co. v. Commissioner of Insurance, 151 Mich. 610, 115 N. W. 707. Prior to the enactment of the statute, it was optional with the parties what provisions the contract should contain upon the subject of payment. Since the passage of the act it has ceased to be optional with the parties, and authorities construing the contract independent of the statute are not conclusive. The provision, 'All premiums shall be payable in advance,' etc., is mandatory in form and in spirit, except as the next subdivision, providing for a month's grace after the first year, expands its application, and, taken together, they require that the payment of the first premium must be strictly in advance, and of subsequent payments within 30 days. We are of the opinion that, as contended by respondent, the note clauses of the policy forms in question are inconsistent with the statutory requirement of payment in advance, and materially change the scheme of the contract as outlined by the statutory requirements and prohibitions."

In the case of Union Central Life Insurance Co. v. Pollard, 94 Va. 146, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715, where the court was discussing the effect of the statute governing life insurance policies, and which declared that no answer to any interrogatory in the application should bar the right to recover unless it was proved that the answer was willfully false, etc., it is said:

"The object of that statute, and statutes of like character which have been enacted in many of the states, was to prevent insurance companies from escaping liability upon their contracts upon mere technical grounds which do not affect the merits of the case. It abolished the common-law rule that the warranty of the truth of the answer to a specific interrogatory in an application for a policy implied that the subject-matter of the question and the answer is material, and that such answer so warranted, if not true, renders the policy void, whether it was made in good faith or not. It provides that no answer in such an application shall bar the right of recovery on the policy unless it was willfully false, fraudulently made, material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued, and that neither the agent nor company had any knowledge of the falsity or fraud of such answer. It is a statutory rule for the regulation of contracts of insurance which prescribes their scope and effect, and determines the duties and obligations of contracting parties. It is therefore as much a part of every contract of life insurance governed by the laws of the state of Ohio, and made after that statute was passed, as if incorporated in it; the general rule being that laws in existence are necessarily referred to in all contracts made under such laws, and that no waiver of the parties nor stipulations in the

contract can change the law. Hermany v. Fidelity, etc., Life Ass'n, 151 Pa. St. 17 [24 Atl. 1064]; Fidelity Mutual Life Association v. Ficklin, 74 Md. 172 [21 Atl. 680, 23 Atl. 197]; Insurance Co. v. Leslie, 47 Ohio St. 409 [24 N. E. 1072, 9 L. R. A. 45]; White v. Providence Saving Life Association, 163 Mass. 108 [39 N. E. 771, 27 L. R. A. 398]."

The power of the company and the assured to made a contract which in effect evades the plain statutory provision prescribing the terms of such contracts, and defining the rights and liabilities of the parties under them, has often been denied. As said in 1 Page on Contracts, § 355, p. 550:

"Statutes are often passed to protect persons against the effects of certain types of contract. The purpose of such statutes would be defeated if their effect could be avoided by contract, and accordingly it is held that, if such is the legislative intent, covenants attempting to avoid the provisions of such statutes are void. Statutes in some states provide that after a certain time an insurance policy cannot be defeated for mere misrepresentation or breach of warranty not amounting to fraud. * * * Their provisions cannot be waived by contract, and an attempt to do so directly or indirectly is void, as by contracting that the law of another state shall govern a contract. So an attempt to evade the statute of fixing the surrender value after a certain number of periods has been paid is ineffectual. So the provisions of a statute requiring notice that a premium is due in order to forfeit the policy for nonpayment cannot be waived by contract. So a provision in a contract for lending money on the security of a paid-up policy, giving to the insurance company the right to require a surrender of the policy for its cash value, in default of payment, has been held void. So under a statute making the value of the property insured as fixed in the policy final in case of a total loss, a covenant, providing for the payment of the actual value only, is void. Thus a contract giving the insurer a right to rebuild where the statute requires that in total loss the amount named in the policy must be paid to the insured is invalid." Joyce on Ins. (2d Ed.) § 163; Griffith v. N. Y. Ins. Co., 101 Cal. 627, 36 Pac. 113, 40 Am. St. Rep. 96.

In Phœnix Insurance Co. v. Levy, 12 Tex. Civ. App. 45, 33 S. W. 992, Judge Fly discusses this question at some length and arrives at the same conclusion, citing other Texas cases. It is a fundamental rule that contracting parties are conclusively presumed to have entered into their contract with full knowledge of all existing laws upon the subject which may affect the validity, formation, performance, operation, discharge, interpretation, or enforcement thereof, and that such laws enter into and become a part of the contract binding the parties. This rule applies with peculiar force to insurance contracts. Lorando v. Gethro, 228 Mass. 181, 117 N. E. 185, 1 A. L. R. 1374. The subject of insurance is one of general and public interest, and the policies are generally verbose and prolix to such an extent that the real meaning and purport of the numerous clauses are obscure to such an extent that the average layman is able to understand them with great difficulty. This fact had induced the Legislatures of many states, including Texas, to enact statutes declaring what provisions policies shall and shall not contain. Courts and contracting parties are alike bound by these laws, and contracts which contravene their provisions are void. Metropolitan Life Insurance Co. v. Johnson, 49 Ind. App. 233, 94 N. E. 785, 788 (4, 5). The contract, as evidenced by the application and policy, is generally prepared by the company, and the rule is, where such a contract is ambiguous and its meaning uncertain, it will be construed more strongly against the party preparing it or using the words concerning which doubt arises. Metropolitan Life Insurance Co. v. Johnson, supra. In his dissenting opinion in the Lefler Case, Judge Amidon uses this language, which we quote with approval:

"It is now elementary law; not only in federal courts, but in all American and English courts as well, that the forfeiture of insurance policies is not favored, and that if the language which the insurance company has chosen is open to construction, that construction will be adopted which will sustain the policy. Not only this, but it is also now settled that the language conditioning a forfeiture must be both plain and explicit. The policy holder cannot be required to bring together such complicated instruments as are presented by this record, and deduce from an analysis of their provisions the company's right to the forfeiture of his policy. The rule that all the provisions of contracts will be examined to ascertain the rights of parties cannot be resorted to for the purpose of evolving a right of forfeiture. That right, if it exists, must be stated in express language, and not be found either by reference or as a deduction from combining numerous provisions. Any other doctrine makes an insurance contract a snare and a fraud on the assured. McMaster v. Life Insurance Company, 183 U. S. 25, 49; 22 Sup. Ct. 10, 46 L. Ed. 64; Royal Insurance Co. v. Martin, 192 U. S. 149, 162, 24 Sup. Ct. 247, 48 L. Ed. 385; and opinion of Judge Hook, in Atlas Production Co. v. New Zealand Fire Insurance Co., 138 Fed. 509 [71 C. C. A. 21, 9 L. R. A. (N. S.) 433]. I cannot escape the conclusion that the court in the foregoing opinion has approached the question for decision in a mistaken light. The question is, not what do these instruments say to a trained judicial mind, aided by the argument of counsel, after all their relevant provisions have been sorted out and brought into such relationship as to make their meaning manifest. The question rather is, What would these provisions mean, as they stand embodied in the instruments, to the average layman, untrained in the construction of written documents? When the question is thus looked at, it does not seem to me that the conclusion of the majority is either 'clear' or 'obvious,' as the opinion states. The words 'without grace,' occurring as they do in a promissory note, are certainly as

open to the construction that they refer to the 3 days of grace allowed by the law merchant as to the 30 days allowed by the policies. The concluding phrase of the note, 'except as otherwise provided in the policy itself,' would be as likely to direct the mind of a layman to the provisions of the policy allowing 30 days additional time for payment as to the other provisions relative to paid-up insurance. The practice of allowing a period of 30 days for the payment of life insurance premiums is now universal. The payment of the notes in question was really the payment of such premium. If the company seeks to take that payment out of the general practice as to the payment of insurance premiums and condition a forfeiture of the policy upon a failure to pay the notes promptly at their maturity, it ought to have declared this purpose expressly, and in plain language in the notes themselves, and not by dark and ambiguous reference to the complicated provisions of the policy. * * * If we are to adopt the doctrine that language which to the trained judicial mind, aided by the argument of counsel, expresses a right of forfeiture secures that right, what becomes of the rule that the right of forfeiture must be expressly stated, and not by reference, and must be embodied in plain and unambiguous language? It is simply abolished."

It is certain that the appellant could not have declared a forfeiture of the policy until after 30 days from February 28, 1918, even though the policy had been issued without the statutory clause inserted therein. To so hold would, in effect, repeal the act of the Legislature by agreement of the parties. Our Supreme Court said, in Underwood v. Insurance Co., 108 Tex. 381, 194 S. W. 585, that a premium note represents the premium and takes its place in the policy, and that it is the equivalent of the premium." The proposition is axiomatic. This policy obligated the assured to pay the premium on or before February 28th of each year. If the note was not a payment of the premium, it merely extended the time of the payment of the premium for the year 1918, eight months, or until October 28th. If the parties could repeal the 30 days' grace requirement by the terms of the note, then why could they not do the same in agreeing upon the condition to be incorporated in the original contract? The same legislative intent controls them in both cases. The policy stipulates that there shall be no interest during the grace period after February 28th, while the note provides for interest from that date, until its maturity, thus stipulating for an additional and valuable consideration for the extension. If the note had been paid October 28th, appellee would not have enjoyed the immunity from interest during the grace period guaranteed to him under the contract, and to hold him bound to pay promptly on October 28th would we think, violate the spirit of the agreement between them in this particular. We think we can safely and fairly hold, even at this point in the discussion, that by the terms of the contract, supplemented by the article of the statute referred to, that appellee was entitled to 30 days of grace after October 28, 1918, but if we are in error in this, there is another potent fact which under the rules relating to the construction and interpretation of insurance contracts removes all doubt. It is this: In none of the cases which we cite, except possibly the Lefler Case, supra, is there a statement that the premium note or extension agreement was made, or that the policy should be void "subject to the provisions of the policy." A similar provision is mentioned in Judge Amidon's opinion in the Lefler Case. This language is found in the note and also in the receipt subsequently issued, if that is to be considered. The note represents the premium, and took its place in the contract. Since it modified only that part relating to the payment of premiums after the first, the only provision of the policy to which it could be made subject is that requiring 30 days of grace. Such contract in no degree conflicts with any forfeiture clause contained in it referring to the payment of any premium after the first. It is therefore not subject to any other provision.

[7] To say the least, there is created an uncertainty and a doubt, which must be resolved against a forfeiture and in favor of appellee. Underwood v. Jefferson Standard Life Insurance Co. (N. C.) 98 S. E. 832, and authorities there cited.

[8] Practically all of the many cases cited by appellant are from jurisdictions where there was not, at the time of their decision, any statute commanding the insertion of a clause providing for 30 days' grace, and this is true of all the Texas cases. It is doubtless this line of decisions which unquestionably supports the appellant's contention which induced the Legislature to pass the act in question. In the absence of a statute governing such contracts, the parties to an insurance contract can, of course, stipulate ad libitum—and it appears that they usually do at the pleasure of the company, as in the case of Pan-American Life Insurance Co. v. Carter (Ala.) 80 South. 75, relied upon by appellant, but that case, like others referred to, is not applicable because the grace clause was granted in the contract, but was not imposed upon it by the statutes of Alabama. There the court could appropriately say that the forfeiture clause in the note did not undertake to destroy any existing right of the beneficiary under the policy. Such a statement could not be true where a statute declares that every policy issued shall provide for a grace of at least one month for the payment of every premium, after the first, during which month the insurance shall be in force.

·When appellant wrote appellee October 19, 1918, "In order that your policy may not lapse, we beg to remind you that the note due October 28th, you gave in lieu of the premium due last February, provides no grace, and settlement should be made without fail," it was merely a statement of the writer's opinion of the legal effect of the note, in which he is shown to be in error as to both dates, and is binding neither upon the appellee nor the court. The time added by the law merchant to the time contracted for was called grace "in an age when kings dispensed their royal favors by the hands of their chancellors." 6 Words and Phrases, 4914. The theologians tell us "grace is unmerited favor, freely given." In modern jurisprudence it is recognized and enforced as a substantial right, and the Legislature has so fixed and emphasized it by statutory law. If, as appellant asserts, the insured has had his period of grace, included in the note, then we ask, When did it begin? He did not get it either in the sense in which ancient chancellors granted it, or in which it is bestowed under the New Testament dispensation, because he agreed in the note to pay for it at the rate of 5 per cent. per annum. According to Paul, that is not grace (Ephesians, ii, 8; Titus, iii, 7), and this court agrees with him. So does Bouvier (vol. 1, p. 758); also 2 Words and Phrases, p. 1839.

There remains to be considered the appellee's contention that if appellant had the right to declare a forfeiture such right has been waived, and it is estopped by its contract to claim it. Appellee's pleadings are sufficient to raise the issue. The clause of the policy relating to the reinstatement of it and the provision for a change in the mode of paying premiums manifestly have no application. Only such provisions as relate to the time of payment of premiums after the first and the right to forfeit in the event of default, in such payment, should be considered. The only provisions we find in the policy relating thereto are the following, which we have numbered for easy reference:

(1) "This policy is issued in consideration of the payment, in advance, of the annual premium of sixty-five and forty-five one-hundredths dollars, and of the payment of a like sum upon each 28th day of February hereafter, during the continuance of this policy until five full years' premiums shall have been paid, or until the prior death of the insured."

(2) "All premiums are payable in advance at the home office of the company or to any agent of the company on or before date due, upon delivery of a receipt signed by an executive officer," etc.

(3) "This policy, including the application, a copy of which is attached, constitutes the entire contract between the parties and shall be incontestable after one year from its date of issue, except for the payment of premiums."

(4) "Any indebtedness to the company, on account of this policy, will be deducted in any settlement hereunder. Any portion of the premium for the current policy year remaining unpaid at the death of the insured shall be considered as indebtedness."

(5) "Policy years shall be computed from the date of this policy."

The principal fact relied upon by appellee to support the issues of waiver and estoppel is the assistant secretary's letter, dated October 19, 1918, supra.

Ura Embry, cashier of the bank at Lubbock, testified: That his bank looked after the collection of the company's premium notes all the time. The bank usually received the notes about a month before they matured and mailed notices to the makers. That about two weeks prior to the maturity of this note, Hopkins came into the bank and told witness to return all of certain other collections which the bank held against him, but to hold this one, as he wanted to take it up. That nothing else was said or done concerning it until several days after Hopkins died, when the company wired the bank to return it.

[9-11] Over the objections of the appellant, appellee was permitted to testify that she had a conversation with her husband, the insured, during the third, fourth, or fifth day of his illness, the evidence being set out in the bill of exceptions as follows:

"Q. State, as near as you can, what was said by Mr. Hopkins, with reference to the premium. A. Well, he mentioned to me the fact that his premium on the Southland policy will be due the latter part of this month, and he said it would be $66.45—I believe that is the amount—and I laughed and said, 'Where will you get that much money?' in a joke, and he laughed and says, 'I can attend to that all right.' Didn't seem to appreciate or notice what I had said, and he said, 'I intend to carry it all right,' and 'I can attend to that all right,' and further said he could have paid the note any time."

As contended by appellant, this evidence is hearsay, and is not admissible under the rule of res gestæ, because nothing was done which his statement tended to explain. Its admission, however, is harmless error, since the same testimony in effect from the witness Embry was admitted afterwards, without objection. Appellant's failure to object to Embry's testimony waives its objection to the testimony of Mrs. Hopkins. G., H. & A. Ry. Co. v. Baumgarten, 31 Tex. Civ. App. 253, 72 S. W. 78; City of San Antonio v. Potter, 31 Tex. Civ. App. 263, 71 S. W. 764.

[12, 13] In the second paragraph of the letter of October 19th the company proposes to Hopkins that if he will make a partial payment of the amount to be due on the note, the balance will be extended a reasonable time. It is true that the statement by Hopkins to his wife that he could attend to the note or carry it was never communicated to the company. His request to Embry, the

cashier of the bank, to hold the note, as he wanted to take it up, was never made known to the company, and was not notice to it. The bank was merely a collecting agent, and Embry's duties with reference to the matter were purely ministerial. The authority of the bank and its officers was limited to the nondiscretionary duty of receiving the money in exchange for the note, and remitting the proceeds to the company. If the bank had held the note beyond its maturity, it would have been upon the request of Hopkins and as his agent. As a mere collecting agent, it could make no agreement which would waive the company's rights under the contract, and notice to its cashier was not notice to appellant. Ash v. Fidelity Mutual Life Association, 26 Tex. Civ. App. 501, 63 S. W. 944; Behrns v. Rogers, 40 S. W. 419; Cunningham v. McDonald, 98 Tex. 316, 83 S. W. 372; Mechem's Agency, §§ 956-957, 1831-1834. While the proposal is a conditional one, it shows a willingness on the part of the company to grant further time upon payment of part of the note, and brings the case within the rule announced in Equitable Life Assurance Society of U. S. v. Ellis, 105 Tex. 526, 538, 147 S. W. 1152, 152 S. W. 625. We think we are also sustained by the following cases: New York Life Insurance Co. v. Eggleston, 96 U. S. 573, 24 L. Ed. 841; Cofer v. Beverly, 184 S. W. 608; Bowers on Waiver, p. 311. In San Antonio Real Estate B. & L. Ass'n v. Stewart, 94 Tex. 411, 61 S. W. 386, Judge Williams said:

"But, aside from this, while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default. To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case. Bish. Cont. §§ 789-808; Bigl. Estop. p. 633 et seq.; Insurance Company v. La Croix, 45 Tex. 158; Insurance Company v. McGregor, 63 Tex. 404."

The Supreme Court of Indiana, in Michigan Mutual Life Insurance Co. v. Custer, 128 Ind. 25, 27 N. E. 124, applied the principle in this language:

"Appellee does not contend that the agreement for an extension was a valid, binding contract, but that it constitutes a waiver by the company of the payment of the note at its maturity. That a provision in a policy of insurance that the company shall not be liable for a loss occurring while a note given for a premium is overdue and unpaid is valid in law, and exonerates the insurer from liability while such delinquency continues, is well established. It is equally well settled that the provision in a policy of insurance, providing for the for-feiture of the same for nonpayment of the premium, is for the benefit of the insurer, and may be waived by it. * * * The position assumed by this court upon this subject is stated in Sweetse v. Ass'n [117 Ind. 97, 19 N. E. 722], supra, in these words: 'It is abundantly settled that an insurance company will be estopped to insist upon a forfeiture, if by any agreement, either express or implied, or by the course of its conduct, it leads the insured honestly to believe that the premiums or assessments will be received after the appointed day. The decisions which hold and enforce this view are very numerous.' And again: 'Forfeitures are not favored in the law; and courts, in order to avoid the odious results of a forfeiture, are not slow in seizing hold of such circumstances as may have been acted on in good faith, and which indicate an agreement on the part of the company, or an election, to waive strict compliance with the conditions and stipulations in the policy.'"

As said in the Ellis Case, supra:

"Waiver is essentially unilateral in its character. It results as a legal consequence from some act or conduct of a party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement, or be supported by a consideration; nor is it essential that it be based upon an estoppel. * * * An unanswerable test of the whole question is: If Ellis, within a reasonable time after his receipt of the letter of May 9th, had made the remittance requested and delivered his note with the policies as security, as proposed, would the company have accepted such adjustment in full settlement of the premium? That it would have done so it seems to us is plain from the very terms of Brophy's and Wyman's letters. It is fair to infer it would have done what it has just said it was willing to do, and both letters stated it was willing to complete the transaction in this way and upon these terms. As the question of waiver is to be determined by the company's conduct and not by any failure of Ellis to act in the premises, if the company would have so accepted the proposed payment and note within a reasonable time after May 9th, in settlement of the premium, that the transaction was not so completed by Ellis did not relieve its acts of its force as an affirmative evidence of waiver, or at least as tending to establish it."

Many other cases might be cited in this connection. The language of the letter of October 19th, when considered with the testimony of Embry, and of the appellee, are sufficient to sustain the court's finding that the company waived the forfeiture and is estopped to claim it.

[14-23] Our discussion of the case so far has been based upon the assumption that under the policy the parties had the right to postpone payment of the premium beyond the due date, viz. February 28th, named in the policy itself. As heretofore stated, in compliance with the statutory requirement, the policy provides that all premiums shall be payable in advance. In the light of this

stipulation it would seem that a note which postpones the actual payment of the premium in cash should be held to have been executed and received as payment. Otherwise, as said by Blair, Justice, in the Franklin Life Insurance Co. Case, supra:

"'The requirement that certain provisions shall be' and certain others shall not be incorporated in the policy requires us to say that no provisions should be inserted which have the effect of avoiding or nullifying the required provisions,' and 'no provision may rightfully be used which shall, with or without action of the policy holder, materially change or avoid the statutes' scheme of the contract."

By requiring the contract to provide for the payment of all premiums in advance it is clear that the Legislature did not intend that time should be given for payment of premiums. The maxim, "expressio unius est exclusio alterius," applies. It is declared by Vernon's Sayles' Civil Statutes, art. 4954, that—

"No insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants [the insured] of the same class and of equal expectation of life in the amount of, or payment of, premiums. * * * Nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as expressed in the policy issued thereon," etc.

This court has heretofore held, in Amarillo National Life Insurance Co. v. Brown, 160 S. W. 658, 665, 666, and we now hold, that articles 4741 and 4954 do not have the effect of avoiding a policy issued in violation of their provisions, nor do we think they would render the note in this case void as a personal obligation. If, however, we construe the note, not as a payment of the premium, but as an agreement, extending the time, then it is an "agreement as to such contract other than as expressed in the policy issued thereon," and violates the statute. Where an instrument is susceptible of two constructions, cne of which would make it legal and the other illegal, the former construction should always be adopted by the court. It then becomes our duty to hold that the note was not given under the policy, but, as stated therein, "subject to the provisions therein contained," and to have been accepted as payment of the premium in advance rather than a postponement, violating the statutory scheme of the contract. If we should admit that under the statute the parties could lawfully contract for the payment of premiums otherwise than in advance, and that the company could forfeit the insurance because a note given for the premium was not paid at maturity, nevertheless the language of the receipt and of the company's letter of October 19, 1918, tends strongly to show that the company considered the note as payment of the premium, and not as an extension. It will be observed that the receipt is not designated a premium note receipt, nor is it an acknowledgment in writing by the company of the receipt of a note given to extend the time, but, as appears from the face of it, it is a "premium receipt," and immediately following this is: "Southland Life Insurance Company, Dallas, Texas. Received payment as described below."

The only description below is: "Note for $66.45, given on account." These serve to confirm, rather than negative, the inference that the note was given in lieu of the premium, and not as an extension of the time of payment. As further evidence in this connection, in the company's letter of October 19, 1918, the note is referred to as the one "you gave me in lieu of the premium," etc. "In lieu of" means instead of, in the place of, or in substitution of (4 Words and Phrases, p. 3475), thus tending strongly to show that the company had accepted and considered the note as a payment and not an extension. Appellant has not informed us what is meant by the statement that the note was "given on account." As it seems to us, it can refer only to paragraph which we have numbered (4), supra. If so, then the note represents simply an indebtedness, to be deducted in any settlement made under the policy, and of course its nonpayment cannot be made the basis for a declaration of forfeiture. Of course the provisions contained in the note and in the premium receipt providing for forfeiture of the policy in the event the note or any draft or check given in settlement of it is not paid are opposed to this conclusion. As previously stated and held in the case of Rouleau v. Continental Life Insurance & Investment Co., supra, we think these conditions are inoperative, as an attempt to ingraft further conditions or provisions upon the contract after its execution, and they should further be held inoperative as extending the right of forfeiture under a policy which the statute declares shall provide for payment of premiums in advance. As the term is generally used and understood, this is not a contract of "term insurance" under which the insured has only the right upon payment of an annual premium to insurance upon his life for the term paid for and the right to continue that insurance from year to year or term to term at the same rate. Wick v. Western Union Insurance Co., 104 Wash. 129, 175 Pac. 955. The caption of the policy styles it a "Five-Year Term Nonrenewable Policy," and it provides for the payment of five annual premiums, "the first payable in advance, and a like sum upon each 28th day of February hereafter, during the continuance of this policy until five full years' premiums have been paid, or until the prior death of the insured." What is said in New York Life Insurance Co. v. Statham,

93 U. S. 30, 23 L. Ed. 791, is applicable here in answer to appellant's contention that default in the payment of any annual premium ipso facto forfeited the policy.

"We agree with the court below that the contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums. Such is the form of the contract, and such is its character. It has been contended that the payment of each premium is the consideration for insurance during the next following year, as in fire policies. But the position is untenable. It often happens that the assured pays the entire premium in advance, or in 5, 10, or 20 annual installments. Such installments are clearly not intended as the consideration for the respective years in which they are paid; for, after they are all paid, the policy stands good for the balance of the life insured, without any further payment. Each installment is, in fact, part consideration of the entire insurance for life. It is, the same thing, where the annual premiums are spread over the whole life. The value of assurance for one year of a man's life when he is young, strong, and healthy is manifestly not the same when he is old and decrepit. There is proper relation between the annual premium and the risk of assurance for the year in which it is paid, and this idea of assurance from year to year is the suggestion of ingenious counsel. The annual premiums are an annuity, the present value of which is calculated to correspond with the present value of the amount assured, a reasonable percentage being added to the premiums to cover expenses and contingencies. The whole premiums are balanced against the whole insurance." Provident Savings Life Assurance Society v. Taylor, 142 Fed. 712, 74 C. C. A. 41.

While the policy under consideration is not a life policy, it is a five-year term policy and the language quoted from the Statham Case is, we think, at least instructive. Unless the policy has an express provision, specifically conferring upon the company the right to declare it forfeited, upon default in the payment of premiums, what was said by Judge Amidon, in the Lefler Case, supra, should control. There are some fundamental canons of construction relating to the interpretation and construction of contracts of insurance, which should be kept before us in endeavoring to arrive at the real meaning of the contract of insurance, as attempted to be modified by the note and the premium receipt. They may be briefly stated as follows: (1) Where two interpretations, equally fair, may be made, that which allows the greater indemnity must prevail; (2) if one interpretation, looking at the other provisions of the contract and to its general object and scope, would lead to an absurd conclusion or a conclusion which violates the statute and renders the contract void, such interpretation must be abandoned, and that adopted which will be consistent with reason and the law; (3) insurance contracts are to be most strongly construed against the insurer who framed it, especially where the language is inconsistent, ambiguous, or contradictory, and where a forfeiture is involved, in order that indemnity may be granted rather than denied; (4) the right of forfeiture must be expressly stated, and not by reference, and must be embodied in the contract in plain and unambiguous language. 1 Joyce on Ins. (2d) §§ 204, 206a, 220e, and 25 Cyc. p. 821, X, A, 2.

[24, 25] We have carefully examined the policy under consideration, and find no provision in virtue of which upon default in the payment of premiums the policy becomes void ipso facto. It is true that the policy recites that it is issued in consideration of the payment of premiums in advance annually, and it is further true that paragraph numbered 3, supra, stipulates that the policy and application constitute the entire contract which "shall be incontestable except for the payment of premiums." These are far from being express provisions that upon default in the payment of premiums the policy is ipso facto forfeited. They merely give the company the right to plead failure of consideration or contest payment upon that ground in an action to recover. Provisions for forfeiture upon default are found only in the note, and in the receipt issued after the note was accepted by the company. As said in 3 Joyce on Ins. (2d Ed.) §§ 1211–1212:

"When the condition as to forfeiture, for nonpayment on maturity of a note given for the premium is contained only in the note, the mere fact that the note is not paid at maturity does not, of itself, avoid the policy. Such a provision is a condition subsequent, of which the company must avail itself by clear and unequivocal acts. It must demand payment at the proper time, and if no payment is made it must declare the policy forfeited or void. Thus a note given for the balance due on a premium, part of which had been paid in cash, provided that 'if the amount of this note shall not be paid when due, said policy shall be null and void,' which note was overdue and unpaid when the insured died. The company neither demanded payment when due, nor gave notice of its intention to insist upon a forfeiture, and it was held that the policy continued in force until the maturity of the note, and was not forfeited by failure to then pay the same. * * * Again, it is held that such a condition in the note is nugatory, and the continuance of liability on the policy is not dependent on the payment of the note at maturity where the policy does not stipulate for forfeiture for such payment. In a New York case the note provided that the policy should lapse for nonpayment at maturity. Payment was not then made and a notice by letter from the company's secretary was given that the policy was forfeited and canceled on the books; that if it was desired to revive the same notice should be given the company thereof at once. This was

not done, nor was the note ever paid, and whether the letter was properly mailed or whether there was a waiver was held a question for the jury. * * * In the absence of a stipulation in the contract for forfeiture or suspension of the risk, the simple condition, in case of nonpayment of a note given for the cash premium when due, payment is not a condition precedent to the validity of the policy, and it continues in force, notwithstanding the note is not paid at maturity, even though the policy provides that if the premium be not paid when due the insurance policy shall become forfeited and void. So a fire policy is not invalidated by nonpayment of premium notes at maturity, where no reference is made to them in the policy, and its validity is in no way contingent upon their payment."

It is true that the courts are not unanimous in such holding, but the weight of authority favors the rule as announced. 25 Cyc. p. 826, 2. The facts in the instant case are that no express declaration of forfeiture has ever been made by the company, unless its answer filed in this suit may be so construed, but, on the contrary, its letter of October 19, 1918, expresses a willingness on the part of the company to extend the time of payment of the balance of the note if a part of it is paid at maturity. The note remained in the hands of Embry until after the death of Hopkins, when the company ordered that it be returned to its office at Dallas. In any event, the question of fact involved has been found by the court against the company. In 3 Joyce on Ins. 1206, we find this language:

"The federal court has decided that the insurance company is bound to present a draft at maturity where it has taken the same in payment of a premium, and that it must not only present the bill for acceptance or payment, but must give the necessary legal notice on refusal to accept or pay the same as would be required of any other holder of commercial paper; that such bill is negotiable under the law merchant, and entitled to protest and notice, which must be given or excused to entitle the company to claim a forfeiture, even though the policy and bill itself both provide that the policy shall become void if the bill is not paid at maturity; and the policy provides that notice need not be given to any party or parties interested therein. And the Supreme Court of the United States has declared that presentments must be made in such case even though the drawer of the bill has refused acceptance and has no funds for payment, but that no protest is necessary for nonacceptance or nonpayment. * * * Again, although a policy stipulates that failure to pay any premium or note or interest thereon when due will forfeit without notice the policy and all payments thereon, 'except as herein provided,' and it is not shown what the exceptions are, still a forfeiture does not necessarily result where insured is in default at the time of his death in the payment of a note given for the premium if the note is taken under such circumstances as to constitute an absolute payment of said premium."

"A marine policy, stipulating that it shall be void for failure to pay the premium notes within a certain time after maturity and demand is not rendered void ipso facto, but is avoidable at the company's option and the insurer may elect to continue the policy in force, notwithstanding the default. In Missouri it is held that mere nonpayment of the note does not ipso facto forfeit the contract, even though it provides for forfeiture on such nonpayment; but the insurer must declare his intent to forfeit. Under a Georgia decision the policy is not forfeited by nonpayment of the note at its maturity, notwithstanding the stipulation in said note that such nonpayment should ipso facto, without notice render the policy void, and even though it was also provided that payment of the premium in advance was the consideration on which the contract was made. It is also decided that failure to pay a premium note at its maturity does not make the policy absolutely void, where the policy contains no clause for nonforfeiture for nonpayment of notes given for premiums, although it provides for forfeiture for nonpayment of premiums when due. The clause, being introduced only for insurer's benefit, makes the contract voidable at its election." Id. § 1206a.

This question was discussed in a well-considered opinion by the Supreme Court of Nebraska, in Haas v. Mutual Life Insurance Co. of New York, 84 Neb. 682, 121 N. W. 996, 19 Ann. Cas. 58, and again in Friend v. Southern States Life Insurance Co., 58 Okl. 448, 160 Pac. 457. These cases are reported in 26 L. R. A. (N. S.) 747, and L. R. A. 1917B, 208. To the cases as reported are appended instructive notes bearing upon the question. Without quoting from either the cases or the notes at length, it is sufficient to say that the holding in both cases, supported by nearly all the decisions referred to in the notes, is to the effect that there must be a provision in the policy itself, expressly rendering it void upon default in the payment of premiums and premium notes before the courts will declare a forfeiture; that where the policy provides that it shall be incontestable after a stated period, except for failure to pay premiums the company could not upon default declare a forfeiture, but could only upon settlement deduct the amount of any premiums unpaid and for which it had a lien. We call attention in this connection to clause numbered 4, supra, which provides that any unpaid portion of the premium for the current year shall, at the death of the insured, be considered as indebtedness, and is to be deducted in the settlement. This provision, it seems to us, is wholly inconsistent with appellant's claim that it had the right to declare a forfeiture upon default in the payment of the notes; since said clause clearly provides the course to be pursued with reference to unpaid premiums at the time of the death of the insured, whatever the rights of the appellant may have been prior to his death under this clause, it seems to us that a forfeiture cannot be subsequently declared.

If we are mistaken in our construction of the various provisions and clauses of the policy and in their relation one to the other, and to the note and receipt, it is because of the inconsistencies and ambiguity resulting from the language used. The correct rule in such cases is announced in 1 Joyce on Ins. (2d Ed.) § 220, as follows:

"Where the intent of conditions or stipulations involving disabilities or forfeitures is doubtful, they should be construed against the party for whose benefit they were imposed, and forfeitures should, if possible, be avoided and the contract sustained; for the right to insist upon forfeitures is stricti juris, and courts will not favor forfeitures by literal intendments and enlarged constructions, nor will they declare forfeitures by implication, as they are not favored in law, and especially are forfeitures not favored in the law where they are induced by the conduct of the agent representing the insurer. In a Delaware decision, the rule stated is that conditions of forfeiture in a policy are not favored, and these and like conditions are always construed strictly, so that a party claiming a forfeiture by reason of a violation thereof is not permitted to deprive the other party of the benefits of the right of indemnity for which he contracted if there is any doubt or uncertainty as to the terms of such conditions, the extent of their application, or the acts which constitute the alleged breach. So it is held in a federal Supreme Court case that on the question purely of forfeiture the rule is that if a policy contains provisions that are inconsistent, or which are so framed as to be fairly open to construction, the view should be adopted, if possible, which will sustain, rather than forfeit, the contract."

In addition to the paragraphs numbered, supra, the policy contains this stipulation:

"Except as herein provided, the payment of a premium, or installment thereof, shall not maintain the policy in force beyond the date when the next premium, or installment thereof, is payable."

This provision cannot be reconciled with paragraph 4, supra, which provides that any portion of the premium for the current policy year remaining unpaid at the death of the insured shall be considered as indebtedness. In view of the uncertainty of the beneficiary's rights under the policy, it is construed against the company.

The judgment is therefore affirmed.

BOYCE, J. (dissenting in part). I cannot agree to many of the conclusions reached by the court in this case, as expressed in the opinion written by Judge HALL. I do not question the law as announced in such authorities as the case of Equitable Life Insurance Society v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; in fact, as I understand the law, the opinion throughout announces correct principles, but I cannot bring myself to the conclusion that the application of these principles to the facts of this case should lead to the results announced. It is not my purpose to indulge in an extended discussion of insurance law, but, accepting as correct in the main the pronouncement of the law as contained in the opinion, to point out those conclusions which I do not think should follow from the application of such law to the facts of this case.

In the first place, I do not think that the facts are sufficient to warrant a finding that there was a waiver by the insurance company of the forfeiture of the policy if such forfeiture or lapse would otherwise have resulted from the nonpayment of the premium note at maturity. The only act of the insurance company upon which such waiver can be based is in the writing of the letter of October 19th, nine days before maturity of the note and the time when any forfeiture could occur. This letter, addressed to the insured, reads:

"In order that your policy may not lapse, we beg to remind you that the note due October 28th you gave in lieu of the premium due last February, provides no grace, and settlement should be made without fail on or before maturity. If inconvenient to pay the full amount due ($69.13), we will accept a partial payment and extend the balance a reasonable time."

The meaning of this letter, it seems to me, is clear enough. It is a plain warning that the time for the lapsing of the policy, if the note be not paid, is near at hand; it proposes an alternative to the full payment of the note in cash "in order that the policy may not lapse," to wit, a partial payment of the note and extension of the balance for a reasonable time; or, to express it differently, it proposes an alternative settlement of the note by partial payment and extension. There is nothing in the letter to suggest that this alternative means of avoiding the lapse of the policy must not be accepted at or prior to the time when the policy would lapse under the terms of the contract as it then existed. Ample time was given, in these days of quick communication by post, telegraph, and telephone, for arrangement of the details of the transaction before the time for the forfeiture of the policy. The whole tenor of the letter, it seems to me, is to invite some action on the part of the insured to prevent the lapsing of the policy in the ordinary course, not to invite action after the time when that result should have become a fact. Wichita Southern Life Insurance Co. v. Roberts, 186 S. W. 412 (1). The case is wholly unlike that of the Equitable Life Insurance Co. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625, where, after the time of forfeiture, the insurance company proposed to make a loan to enable the insured to pay the premium already past due, and the insured died prior to the expi-

ration of a reasonable time within which to act upon this proposition, and it was held that such action on the part of the insurance company was a recognition of the continuance in force of the policy pending the result of negotiations for payment of the premium, and that, since no time was fixed for the acceptance of the proposition on the part of the company, it would be concluded that the company intended that the insured should act upon it within a reasonable time. The lack of attention on the part of the insured to the payment of the note at maturity in this case was evidently due to his sickness, and not to any reliance on the letter as inducing a belief that he could attend to it after October 28th. He was stricken with influenza and pneumonia on October 19th, and, to use the words of his wife, appellee herein, was "desperately ill from the first minute." Within a few days after he became ill he spoke to his wife of the policy, and stated that the premium would be due the latter part of the month, and said that he could attend to it all right. He was irrational during a greater part of the time of his illness, and died on October 29th. These facts are most appealing to the sympathy; the consequence of the lapse of the policy is deplorable. But it has long been held that "sickness or incapacity are no grounds for avoiding the forfeiture of the policy or for granting relief in equity against forfeiture" (Thompson v. Life Insurance Co., 104 U. S. 252, 26 L. Ed. 766), and the courts cannot rightfully refuse to enforce the forfeiture "even in hard cases and in the face of a harsh consequence" (Equitable Life Insurance Society v. Ellis, 105 Tex. 536, 147 S. W. 1156).

I cannot concur in the proposition that the note is to be considered as the payment of the premium and its provision for forfeiture of the policy disregarded. I do not think our decisions leave us free to so hold. Underwood v. Security Life Insurance Co., 108 Tex. 381, 194 S. W. 588; Wichita Southern Life Ins. Co. v. Roberts, 186 S. W. 411. The note recites that it is given "on account of the premium," and provides for forfeiture of the policy in the event of its nonpayment. The receipt is to the same effect. The Supreme Court, in the Underwood Case, supra, held that such a note "represents the premium, and takes its place in the contract. It is the equivalent of the premium, and should be treated as such when the note itself preserves substantially the provisions of the contract which relate to a failure to pay the premium for which it was given." The note in this case is not distinguishable in its terms from the note in question in the case of Wichita Southern Life Insurance Co. v. Roberts, supra. It was held in both the cases cited that the nonpayment of the note forfeited the policy. I am in considerable doubt as to whether the provisions of articles 4741, 4953, and 4954 of the Revised Statutes should be construed so as to forbid agreements such as this. These articles of the statute were formerly a part of the act of 1909, p. 192 et seq., article 4953 being section 17, article 4954 being section 19, and article 4741 being section 22 of said act. It is provided by article 4953 that the policy of insurance "shall contain the entire contract between the parties"; by article 4954 that the insurance company shall not "make any contract of insurance or agreement as to such contract other than as expressed in the policy, issued thereon"; and by article 4741 it is required, among other things, that a life insurance policy shall contain: (1) "A provision that all premiums shall be payable in advance"; and (2) "a provision for a grace of at least one month after the payment of every premium after the first, which may be subject to an interest charge." Can it be that the Legislature intended by these provisions to prohibit the insurance company from granting further grace at the time of the maturity of a premium? The Commission of Appeals, in the case of State Mutual Life Insurance Co. v. Rosenberry, 213 S. W. 242, in discussing the effect of article 4953, said:

"There is nothing in the Texas statute requiring collateral agreements affecting the policy, made subsequent to its issuance to be included in or attached to the policy."

This is a recognition that subsequent collateral agreements might be made. However, the court seems to have overlooked the provisions of article 4954. This will be apparent from a reading of that part of the opinion which discusses the Alabama case cited therein, Mutual Life Insurance Co. v. Lovejoy, 78 South. 299, L. R. A. 1918D, 860, and compares the Alabama statute with our own. For this reason the force of the authority is much weakened. The particular provision of article 4954 under consideration is identical in language with a similar statute of Kentucky. Compare the language of this article with that of the Kentucky statute (Ky. St. § 656) as quoted at length in the case of Provident States Life Insurance Society v. Puryear, 109 Ky. 381, 59 S. W. 15, and as partially quoted in the case of Fidelity Mutual Life Insurance Co. v. Price, 117 Ky. 25, 77 S. W. 384. In the case last cited it was held that these provisions did not apply to an agreement for extension of payment of a premium as evidenced by the insured's note; it being said that such provisions "relate to the time the policy was issued." But whatever may be the correct construction of these provisions of the statute in reference to a subsequent agreement made for the extension of the payment of a premium, the insured and the beneficiary of a policy would certainly

gain no advantage in maintaining the illegality of the contract. For, as said by the Kentucky court, in the said case of Fidelity Mutual Life Insurance Co. v. Price:

"If it [the statute] had the effect, as contended by counsel, that the note was void, and likewise its provisions, because it was not attached to the policy, the appellee could not get any benefit from the execution of the note. If it was void * * * its terms would not be binding on either party. The logic of counsel's position would be that, as there was no valid agreement between the parties as to the extension of time for the payment of the premium, the policy was forfeited on the 20th of November, 1900 [the date when the premium was originally due], and the insured was never relieved from the forfeiture. If the contract was void; then the court would not uphold the part that was beneficial to the insured, to wit, the extension of time for * * * the right of forfeiture, and deny the company the right to insist upon the forfeiture upon the failure to perform that part of the contract which induced the company to extend the time for declaring the forfeiture."

To the same effect is the language of our own Supreme Court in the Underwood Case, supra:

"We think the beneficiary should not be allowed to accept the benefits of the extension of the life of the policy which was provided by the execution of the note by her husband, and its acceptance by the company, and at the same time be heard to complain that it changed the contract and disturbed her vested rights. It seems inequitable for her to rely upon the note to prevent a forfeiture of the policy for a failure to pay a premium, and at the same time to repudiate the provisions of the note relating to forfeiture, when they are substantially the same provisions provided in the policy itself."

I may here say that the appellee does not seek to uphold her right to recover on the policy on this ground. Appellee relies on only two propositions to sustain the judgment, to wit, that the insured was entitled to 30 days' grace in the payment of the note; and if mistaken in this that the letter written by the company on October 19th was sufficient to support the finding of a waiver.

In the preceding discussion I have assumed that under the terms of the policy it would automatically lapse upon nonpayment of a premium when finally due after allowing grace. I think this is the correct construction of the policy though in this opinion I am also in disagreement with the majority of the court. The policy provides for the payment of the sum of $5000 to the beneficiary upon the death of the insured, "within five years from the date hereof, provided this policy is then in full force and effect." It recites that it is issued "in consideration of the payment in advance of the annual premium, $66.45, and of the payment of a like sum upon each 28th day of February

hereafter during the continuance of this policy until five full years' premiums shall have been paid, or until the prior death of the insured." By its terms it requires that all premiums should be payable in advance, but this clause of the policy continues thus:

"The mode of premium payments may be changed by the insured giving written notice to the company at its home office, not less than forty-five days prior to any anniversary of this policy, from annual payments to semiannual or quarterly, or vice versa, at the premium rate and on the conditions in force at the date hereof. Except as herein provided, the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable."

This clause is immediately followed by this provision:

"A grace of thirty-one days without interest shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the period of grace the unpaid premium for the then current policy year shall be deducted from the amount payable hereunder."

It is true that the policy does not contain the exact language that is used in many policies to indicate forfeiture upon nonpayment of premiums when due, as that the policy and all its rights thereunder shall be forfeited, or that the policy shall ipso facto be void, etc., but, the form of expression is not material if the meaning be the same. Ætna Life Insurance Co. v. Wimberly, 102 Tex. 46, 112 S. W. 1038, 23 L. R. A. (N. S.) 759, 132 Am. St. Rep. 852; Iowa Life Insurance Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204; Kline v. New York Life Insurance Co., 104 U. S. 88, 26 L. Ed. 662. In the case of Ætna Life Insurance Co. v. Wimberly, supra, the policy provided that it should "cease * * * if the premiums are not paid on or before the day stipulated * * * for such payment, except that a grace of thirty days is allowed for the payment of any premium after the first." And our Supreme Court held that the policy was ipso facto forfeited upon nonpayment of the premium within the 30 days' grace. In the case of Iowa Life Insurance Co. v. Lewis, supra, a note was given for a premium and a receipt issued by the insurance company, which provided that if the note should not be paid "at maturity the said policy shall cease and determine," and the Supreme Court of the United States held that failure to pay the note automatically terminated further liability on the policy. The same effect was given to a similar provision in the policy in the Kline Case, referred to. What is the difference in meaning between a provision that upon nonpayment of a premium the policy shall cease, and the one under consideration that the payment of a premium shall not maintain

the policy in force beyond the date when the next premium is payable? I must say that I can see none. I do not think there is any inconsistency between this provision of the policy and the subsequent one, which the court holds to be inconsistent with it, to wit:

"Any indebtedness to the company on account of this policy will be deducted in settlement hereunder. Any portion of the premium for the current policy year remaining unpaid at the death of the insured shall be considered as indebtedness."

Several contingencies may be suggested which this clause of the policy was intended to cover. For instance: If the mode of payment of premium were changed, in accordance with the terms of the policy, and made quarterly or semiannually, and death should occur during any one of the periods prior to the last period of the year, then under this provision of the policy the balance of the annual premium remaining unpaid could be deducted in settlement; or if, as in this case, the time of payment of a premium should be extended and death occur prior to the time for payment under the agreement for extension, then, under this provision of the policy, the amount due on account of such premium would be deducted from the settlement. So there being contingencies which might reasonably arise to which this clause of the policy would apply, I cannot think that it should be construed as being inconsistent with and destroying another express term of the policy. The insurance granted by the policy is, in my opinion, "term insurance" within the meaning of our statutes; otherwise it violates a number of its provisions, in particular, subdivisions 6 and 7, of article 4741, which provisions stipulate that they shall not apply to "term insurance."

I am inclined to the opinion that the court is also in error in holding that the insured had 31 days' grace for the payment of the note after its maturity, but I am not so convinced of the error in this conclusion that I cannot defer to the majority and assent to this holding.